UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :

       v.                                    :    CR. NO. 07-131-01 (JR)

JAMES BECTON                              :

DEFENDANT JAMES BECTON'S SENTENCING MEMORANDUM

The defendant, having been convicted at trial of a conspiracy to distribute and possess

with the intent to distribute cocaine base and cocaine,[1] will appear for sentencing before this

honorable court on January 30, 2009.  He respectfully requests that the court consider this

memorandum in imposing sentence.

SENTENCING PARAMETERS

The §851 Enhancement

As an initial matter, the defendant wishes to provide his position regarding the statutory

minimum and maximum that he faces.  As the court will recall, the government filed an

enhancement notice pursuant to 21 U.S.C. §851. That enhancement was opposed as a pre-trial

matter and, for purposes of the record, will again be opposed prior to this sentencing. The basis

of the enhancement was a proffered D.C. Superior Court conviction under the Youth

Rehabilitation Act.  That "conviction" was set aside pursuant to the provisions of the Act.  While

this matter was being litigated, the D.C. Circuit Court decided United States v. Law ,

---

[1]Additional counts of conviction involve the use of a telephone to facilitate the
conspiracy.

1

_____F.3d_____ (D.C. Cir. 6/13/08).  That case, according to the government, held that a set aside conviction could still be used to enhance a federal drug conviction. While for purposes of the record, the defendant will not concede the dispositive nature of that holding, the case still clearly indicates that even a set aside conviction must be still be proven by appropriate evidence. See also, United States v. Price, 409 F.3d 436 (D.C. Cir. 2005).  The government has never proffered a certified copy of any conviction in that matter, but has relied only on what might be termed circumstantial evidence, i.e. a police report regarding the incident, and a copy of the set aside order.

It is incumbent upon the government to produce such documents as are necessary to establish the prior conviction.  The inquiry is not what *probably* occurred, but what *necessarily* occurred.  See In re Sealed Case, 548 1085 (D.C. Cir. 2008)[decided in the context of the Armed Career Offender Act].  In a similar case involving an enhancement under §851, it has been held that the government bears the burden of proving the prior conviction beyond a reasonable doubt. See United States v. Luna, 768 F.Supp. 705 (N.Cal. 1991).

It should be noted that in United States v. Law, supra., the matter was remanded for the district court to determine if the prior conviction had been proven by the necessary evidence. Significantly, the probation office has not used any prior drug conviction in computing Mr. Becton's criminal history.  In making that determination, the probation office noted that its own standards[2] could not be met in establishing the past conviction (PSR ¶108a)

The defendant maintains that the government has simply not established a past narcotics conviction by the necessary evidentiary standard and, the enhancement is invalid.  Consequently,

---

[2]Probation office standards require a certified copy of the judgment and commitment.

neither the statutory minimum nor maximum of the defendant's conspiracy conviction is not affected by the §851 enhancement.

<u>The Verdict Form</u>

As the court might recall, the verdict form reflected an internal inconsistency with regard to the jury's finding regarding cocaine base.  It is well settled that since the Supreme Court's decision in <u>Apprendi v. New Jersey</u> (citation omitted), that drug quantity is an offense element that must be submitted to a jury and proved beyond a reasonable doubt.  In this case, the jury found that the government has proved Mr. Becton's liability for more than 50 grams of cocaine base, but concluded that the government had not established his liability for more than five grams of cocaine base.  (See verdict Form, page 2  ). Certainly, the ambiguity, under the Rule of Lenity, requires that the court utilize the lowest finding.  Consequently, the defendant believes that the defendant's potential liability on his conspiracy conviction for crack cocaine is 20 years.  Even, if the court were to conclude that the conviction could be enhanced by §851 notice, there would be no mandatory minimum and a maximum of 30 years.  Along this line, it must be noted that the jury's finding with regard to cocaine [powder] compels a sentence of at least five years with a 40 year maximum.  Even if enhanced, the cocaine portion of the verdict would trigger no more than a ten year mandatory minimum.

Returning to the significance of the verdict form, the defendant contends that this is a very different matter than *counts* of conviction that are factually inconsistent.  Such factual inconsistencies between convictions has long been held to be a proper function of jury compromise.  For example, an acquittal on a predicate drug count does not save a defendant from bearing the consequences of a conviction for possession a firearm in furtherance of drug

3

trafficking pursuant to 18 U.S.C. §924( c).

The instant situation is, however, very different.  While counsel could not find a case in which such an internal consistency exists, there is a huge difference between separate counts that are factually consistent and inconsistencies within a single count.  In the instant case, we are left to speculate regarding what the jury meant.  While the government might profess certainty concerning the jury's intention and argue that it is "clerical error," Mr. Becton submits that the inconsistency embodied in the verdict negates proof beyond a reasonable doubt. Even if there is a high degree of probability concerning the jury's intention, it is not sufficient to establish an offense element beyond a reasonable doubt.  Lacking the requisite certainty, the verdict with respect to cocaine base should be treated merely as a general verdict triggering no increase in the statutory minimum or maximum.

<u>Sentencing Guidelines</u>

The final PSR was issued on January 23, 2009. The defendant had filed numerous objections to the original report. Some have been resolve; some have been not.  Since sentencing methodology requires that the court make a finding regarding the applicable guideline range, the defendant has listed his objections by numbered paragraph in the PSR, , the reasons for his objection, and the effect that the factor has on the guideline computation.

¶¶18 to 77 - Mr. Becton, in order to preserve all appellate rights in this matter, denies the allegations contained in these numbered paragraphs.  In this vein, the defendant would note that many of the "facts" embodied in these paragraphs were not the subject of evidence introduced at trial.

¶¶78-87 - With respect to Counts 20, 29, 47, 49, 51 through 53, 56 and 58, involving

-4-

Unlawful Use of a Communication Facility - the defendant acknowledges that these counts were the subject of conviction and must be conceded for sentencing purposes.

¶88 - Involves the conclusion that Mr. Becton, along with his brother Willie Best, were leaders of the drug conspiracy.  This factor was not subject to a jury finding and is disputed by the defendant.  The defendant does not believe that such a leadership role was conceded by Willie Best in the factual proffer supporting his guilty plea.  This factor causes the probation office to recommend a four level upward adjustment for leadership role pursuant to U.S.S.G. §3B1.1(a). See PSR ¶101.

¶98 - Drug Quantity-  The defendant disputes the conclusion that he is responsible for more than 4.5 kilograms of cocaine base; an estimate that provides for an initial offense level of 38. Clearly, quantity is likely the easiest factor for government witnesses to inflate.  While drug quantity may be the subject of reasonable estimate, there is absolutely no evidentiary foundation for this conclusion.  The defendant would note that the jury verdict would place the defendant at Offense Level 26 by virtue of its finding regarding conspiracy goals as to cocaine (500 grams). With respect to cocaine base, as previously argued, the defendant contends that no specific quantity finding has been made by the jury.  Even assuming that the jury did make a finding of 50 grams or more of crack cocaine, the Offense Level, based on that finding, would be no more than Level 32.  While the court must necessarily make its own finding, the defendant submits that placement at Offense Level 38 is not supported by sufficient evidence. The Offense Level U.S.S.G. §2D.1.1(a)(3) is, at least, six levels too high.  Additionally, it should be noted that just last week, the U.S. Supreme Court issued its opinion in Spears v. United States, 555 U.S. _____ (1/22/09). Clarifying, last year's opinion in Kimbrough v. United States, 552 U.S. _____

(2008), the court made it clear *that a sentencing court could categorically reject the crack/cocaine ratio embodied in the guidelines, and select its own as a replacement*.  Clearly, almost two decades of distortion and overly harsh sentencing for crack offenses requires that a far more reasonable ratio be employed by this court.

        ¶102 - The defendant additionally disputes the two level upward adjustment under U.S.S. G. §3B1.1(a) recommended for his use of minors in connection with the conspiracy. Mr. Becton contends that there is simply no proof that juveniles acted at his behest, or with his knowledge,. to further the goals of the conspiracy; or that he knew the actual age of all alleged participants.  <u>The two level upward adjustment is inappropriate.</u>

        In sum, the defendant submits that the probation office has placed his adjusted Offense Level at 12 levels higher than it should be.  Offense Level 34, Criminal History Category IV (210 to 262) would, in defendant's estimate, be the appropriate guideline range.

        In any event, as the Supreme Court's decision in <u>Nelson v. United States</u>, ____ U.S. _____ (1/26/09) makes clear, that a district court cannot attach any presumption of reasonableness to the guidelines, even when properly computed. __

<u>Sentencing Recommendation</u>

        No matter what legal rulings or guideline findings the court makes in this matter, Mr. Becton will clearly qualify for a substantial sentence in this matter. His conviction for a Conspiracy involving More than 500 Grams of Cocaine, by itself, places the defendant in the 5 to 40 year range.  Potential rulings by this court could find Mr. Becton facing a possible twenty (20) year mandatory minimum.  Counsel would submit that, for the reasons that follow, twenty years

should be an absolute maximum and the court, if its legal conclusions allow, should consider an even lower sentence. Obviously, any specific request must await the court's conclusions about the sentencing issues raised in the first part of this memorandum.

The defendant is approaching his 35th birthday. He suffers from ulcerative colitis which has led to several hospitalizations and continues to plague him in major ways. The disease is progressive and frequently results in removal of a significant part of the colon. Given the level of prison health care, the condition must be considered extremely serious. The defendant would respectfully request that the court recommend that he be incarcerated at the Federal medical facility at Buckner, North Carolina.

Significantly, the government's evidence in this case indicates little if any drug related activity on the part of the defendant in the year preceding his arrest. The court will recall that there was a premature takedown in 2006 (searches and arrests) that indicated the extent of government investigation. While the government chose not to press charges at that point, there was no specific conduct charged against Becton in the 2007 indictment that came after the 2006 takedown. It could certainly be argued that the defendant had gotten the message and withdrawn from serious narcotics activity. Becton had himself taken a legitimate job at George Washington Hospital (PSR ¶147) A May 2007 search of his apartment revealed no drugs, weapons, or significant sum of money.[3]

While the government will clearly appoint to the defendant's acquittal on various offenses to support a severe sentence, the use of acquittals in unrelated cases that were not before this court, and about which the court knows nothing, seems patently unfair. By any account, Mr.

_____

[3]The search did reveal wax in a baking pan and approximately $1300 in cash.

Becton will receive a "severe" sentence.

The sentencing guidelines were originally adopted, in part, to end unwarranted disparities in sentencing. While one might argue that the cure became far worse than the disease, it is clear that the Supreme Court - in concluding that mandatory guidelines are unconstitutional- was not trying to promote disparity. Every multi-defendant case results in the creation of a sentencing matrix. From the least culpable to the most culpable, the sentences of co-defendants bear some relationship to one another.

In the instant case, non cooperating defendants all seemed to receive (and accept) plea bargains involving fixed terms under FRCrP 11 (c)(1)( c). The numbers included in these agreements are, for the most part, generated by the government, and accepted by the court. While the government supports these agreements, which substantially depart from guideline ranges, based on its prosecutorial discretion, the court must necessarily conclude that the sentences embodied in these agreements -to the extent that they depart from the guideline calculation- are based on "justifiable reasons." See U.S.S.G. §6B1.2(c)(2); United States v. Coney, 390 F.Supp. 2d 844 (D. Neb. 2005). . Implicitly the court must conclude that the agreed upon sentence is consistent with the statutory objectives contained in 18 U.S.C. §3553(a).

Make no mistake, the defendant is not complaining about the sentences received by his co-defendants. He would note that Willie Best, a purported organizer of the conspiracy, received 13 years; far less than his guidelines calculation. Best's plea agreement allowed him to escape liability for weapons possession in Virginia, possession of four kilograms of cocaine in North Carolina, and for his involvement in a dog fighting ring. Similarly, Keith Sampler, a purported "lieutenant," received a ten year sentence that was to run concurrently with related matters.

Again, a significant departure from the guidelines.

Putting aside what offer the defendant could have obtained had he accepted a plea offer, the question is what *has occurred* that would justify anything even approaching a guidelines sentence. Clearly, he exercised his constitutional right to a jury trial. While going to trial has long been considered a somewhat valid reason for increasing a sentence, nothing suggests that the increase should be of geometric proportions. If the sentences imposed on the various co-defendants were believed by the government and the court to be appropriate, how much can Becton's sentence reasonably deviate from theirs? If a thirteen year sentence was appropriate for Willie Best, how much more can reasonably be imposed on James Becton? How much more is necessary to achieve the statutory objectives? Counsel would argue "not that much."

As previously stated, the parameters of this sentencing must await judicial resolution of certain legal matters. Nonetheless, the dictates of 18 U.S.C. §3553(a) certainly mandate a sentence that is not vastly disproportional to those received by other defendants. Without referring to any specific sentence, Mr. Becton is clear facing an amount of prison time that reflects the seriousness of the offense; will adequately deter him [and presumably others] from criminal conduct; protect the public for a significant period of time; and provide ample time for vocational training.

Importantly, the sentence imposed should **"avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."** §3553(a)(6). The defendant urges this court to impose a sentence that is proportional to those received by his fellow co-defendants. Such a sentence will amply satisfy the statutory objective. Along this line, it should be noted that Mr. Becton was incarcerated between October 2003 and

May 2005, some 20 months on conduct that was clearly part of the conspiracy.[4]

Counsel and the defendant thank the court in advance for its consideration of this memorandum.

Respectfully submitted,

_____/s/_____
Edward C.. Sussman
Suite 900 - South Building
601 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 737-7110


CERTIFICATE OF SERVICE

_____I HEREBY CERTIFY THAT a copy of the foregoing memorandum was served upon all interested parties through the court's electronic filing system on this 28th day of January, 2008.


_____/s/_____
Edward C. Sussman

_____

[4]The incarceration was a function of pretrial detention for the alleged shooting of Russell Harris; conduct that was part of the trial, and a failure to appear stemming from a drug case involving felony drug possession in an apartment located in "the courts."

-10-