1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


                                    :
UNITED STATES OF AMERICA            :    Criminal No. 07-131
                                    :
                                    :
v.                                  :    February 5, 2009
                                    :
                                    :
JAMES BECTON,                       :    11:25 a.m.
              Defendant             :
. . . . . . . . . . . . . . . . .   :  . . . . . . . . . . . .


TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

  For the United States:          ARVIND K. LAL, AUSA
                                  MATTHEW P. COHEN, AUSA
                                  UNITED STATES ATTORNEY'S OFFICE
                                  555 Fourth Street, NW
                                  Washington, D.C.  20530


  For the Defendant:             EDWARD CHARLES SUSSMAN, ESQ.
                                 601 Pennsylvania Avenue, NW
                                 Suite 900-South Building
                                 Washington, DC 20004-2601
                                 (202) 737-7110


  Court Reporter:               REBECCA STONESTREET, RPR, CRR
                                Official Court Reporter
                                Room 6511, U.S. Courthouse
                                Washington, D.C.  20001
                                (202) 354-3249


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

**P R O C E E D I N G S**

1

2   COURTROOM CLERK:  This is criminal case number 07-131,

3   United States of America versus James Becton.  Arvind Lal and

4   Matthew Cohen for the government, Edward Sussman for the

5   defendant, and Kelly Kramer-Soares from the probation office.

6   THE COURT:  All right.  Counsel, I have had the

7   occasion now to think and study some over the issues that we

8   discussed a few days ago that will determine what the

9   appropriate guidelines range is for Mr. Becton's sentence.  I am

10  required first to establish a guidelines range and then to

11  consider the guidelines range, and then to consider whether it

12  is sufficient or insufficient for the statutory purposes

13  pronounced in 3553(c).  And for that purpose I've had to sort

14  out a number of issues.

15  And the issues are first whether Mr. Becton's Youth

16  Corrections Act conviction has been proven beyond a reasonable

17  doubt; second, what is the effect of the confusion in the jury's

18  verdict about crack cocaine; third, whether enhancement should

19  be added to the guidelines offense level for the use of minors,

20  for weapons, and for leadership of the conspiracy or the

21  enterprise.

22  And my findings on those various issues are as follows:

23  First, that Mr. Becton's prior conviction has indeed been proven

24  beyond a reasonable doubt.  It's proven, I think, by

25  Judge Weisberg's order vacating the conviction, which it seems

1    to me proves beyond a reasonable doubt that there was something

2    to vacate.  I do not read the case law as requiring a certified

3    copy of the J&C to establish the fact of a prior conviction, and

4    believe that the conviction in question has been established

5    beyond a reasonable doubt by the documents that have been

6    produced by the government and by the probation office.

7         That conviction makes Mr. Becton's criminal history

8    category a five rather than a four, since the law is very clear

9    that even a conviction expunged under the Youth Corrections Act

10   will be considered as part of the criminal history under the

11   guidelines.

12        Second, the confusion in the jury verdict.  I think

13   that frankly it's an issue that is not worth fighting about,

14   given where I come out on the eventual sentence in the case

15   anyway.  And accordingly, my conclusion is that all we can say

16   with certainty about the verdict is that the jury found the

17   defendant guilty of conspiracy to possess with intent to

18   distribute and to distribute mixtures and substances containing

19   a detectable amount of cocaine base, but since it's only a

20   detectable amount, the weight doesn't calculate.  The crack

21   weight will not calculate -- basically, the crack weight is

22   overtaken by the cocaine weight in this verdict and plays no

23   role at all.

24        Third, I do not think that the record establishes, at

25   least not to my satisfaction, that Mr. Becton should have a

1    two-level enhancement for the use of minors.

2          MR. LAL:  I'm sorry, could you say that again?

3          THE COURT:  He should not get the two-level enhancement

4    for the use of minors.  All we have is Jaquan Best's testimony

5    about the brother and some surveillance photos showing kids

6    opening and closing doors.  It doesn't make it, as far as I'm

7    concerned.

8          But the enhancements for the use of weapons and for

9    Mr. Becton's leadership of the enterprise or the conspiracy are

10   firmly established by record evidence.

11         As to the weight of the powder cocaine, the guidelines

12   set up categories up to 500 grams, up to three and a half kilos,

13   three and a half to five kilos; the jury's verdict finds proven

14   500 grams or more but less than five kilos of mixtures and

15   substances containing a detectable amount of cocaine.  There's

16   nothing confused about that.  And I find that the record

17   evidence establishes by a preponderance of the evidence, and in

18   fact beyond a reasonable doubt, that the weight of cocaine,

19   powder cocaine, for which Mr. Becton is responsible is between

20   three and a half kilos and five kilos.  At least three and a

21   half kilos.

22         That means that the net offense level for Mr. Becton is

23   30 for the weight of the drugs, plus two for the weapons, plus

24   four for leadership, is a net of 36.  He is an offense level 36,

25   he is a criminal history category five, and the applicable

1   guidelines range is between 292 months and 365 months.  Those

2   are my findings on the guidelines.

3         Now, do I -- does either side want to allocute further

4   on what the sentence should be within that range, or as to

5   whether that range is an appropriate range considering the 3553

6   factors?

7         MR. SUSSMAN:  I would, Your Honor.  But I would ask if

8   I could have a brief moment to just explain the consequences of

9   the Court's rulings to Mr. Becton.

10         THE COURT:  Yes.

11         MR. SUSSMAN:  Your Honor, I've explained the

12   consequences in terms of -- I'm sorry.

13         MR. LAL:  If we could -- I'm happy to let Mr. Sussman

14   go first.  The government would certainly like to allocute also.

15   I have to say, it's been awhile since I've been at a sentencing

16   before Your Honor, and so how would you like to proceed in terms

17   of both sides speaking?

18         THE COURT:  I have invited both sides to speak; what

19   usually happens is the prosecution speaks first and then the

20   defense counsel and then the defendant.

21         So go ahead, Mr. Lal or Mr. Cohen.

22         MR. LAL:  Well, actually, I think both of us may

23   address you on slightly discrete issues.

24         MR. COHEN:  At least at this sentencing proceeding I've

25   ended up being more of the law guy on these verdict form and

6

1    sentencing issues, and I just wanted to make clear for the

2    record that I believe it's unclear now whether the Court has

3    resolved the verdict form issue.  I understand why, based on

4    what Your Honor has ruled, but I did want to make clear that we

5    are in no way abandoning the position we've already taken; that

6    is, we believe that the jury did convict Mr. Becton of the

7    50 grams or more crack conspiracy, and we want to be able to

8    preserve that for any appeal.

9          The Court has not made findings as to the crack weight

10   that Mr. Becton would be responsible for, and I --

11          THE COURT:  I guess it nets out to zero.

12          MR. COHEN:  The crack weight that he -- well, I

13   understand Your Honor's finding as to the verdict form, and I

14   recognize that.  But I believe that even if we were to

15   proceed -- if the Court were to rule, and maybe the Court has

16   ruled, that Mr. Becton was convicted of a detectable amount of

17   cocaine base but not any more, the Court still is required under

18   the guidelines to make its finding as to the amount of crack

19   Mr. Becton is actually responsible for.

20          In other words, if the jury's verdict doesn't have a

21   finding in it, the Court, based on its review, based on the

22   evidence it heard, could make a finding, under the preponderance

23   standard, that Mr. Becton trafficked in a certain amount of

24   crack cocaine.

25          THE COURT:  Excuse me, Mr. Cohen.  Zero would be the

1    wrong result, because there are actually three checks on this

2    verdict form that have to do with crack cocaine.  The first

3    finds proven the charge of conspiracy to distribute and possess

4    with intent to distribute mixtures and substances containing a

5    detectable amount of cocaine base.

6              MR. COHEN:  Right.

7              THE COURT:  The second finds -- well, the second and

8    third cancel each other out, as I've decided.  But what's

9    canceled out is the five grams or more but less than 50 grams,

10   so somewhere between zero and five grams of crack cocaine.

11             MR. COHEN:  Or 51 and higher.

12             THE COURT:  Oh, I think you'll run into Supreme Court

13   decisions if you go that route.  Somewhere between zero and

14   five grams of crack cocaine, but it makes no difference to the

15   guidelines range.

16             MR. COHEN:  I disagree in the sense that Your Honor can

17   make a -- you could make factual findings at sentencing for

18   acquitted conduct.  And I don't think we have acquitted conduct

19   here, but let's say Mr. Becton was charged with a gun possession

20   and the jury acquitted him of that; the Court could still make a

21   finding at sentencing by a preponderance that he did possess a

22   gun and enhance his sentence accordingly.

23             We're asking the Court to essentially do the same thing

24   here with crack.  If Your Honor is able to make a finding as to

25   what the evidence showed he would be responsible for under the

1    guidelines, we think the evidence has clearly shown greater than

2    four and a half kilograms of crack.

3         If the Court were to make I think the logical

4    connection between the powder weight you've already attributed

5    to Mr. Becton, and recognized that based on the evidence, every

6    time he possessed powder it was usually if not always to convert

7    it to crack and sell, so even with that attribution, the three

8    and a half to five kilos of crack, that would, of course,

9    enhance his offense level.

10        Now, how that ends up factoring out when the offense

11   level that's enhanced by a crack finding is greater than what

12   the Court has determined is the statutory maximum for the crack

13   count of conviction, I recognize there's a difficult issue

14   there.  But nevertheless, for the record and to protect us in

15   the future in this case on appeal, we would ask Your Honor to

16   make that finding.

17        THE COURT:  For purposes of the guidelines calculation,

18   Mr. Cohen, I find that the defendant has been found guilty by

19   jury verdict and will be sentenced for, whatever it has to do

20   with the sentencing guidelines, conspiracy to distribute and

21   possess with intent to distribute somewhere between zero and

22   five grams of mixtures and substances containing a detectable

23   amount of cocaine base.

24        MR. LAL:  Just for the record, I think the government

25   would disagree with that, given the testimony of all of the

1    individuals.

2          THE COURT:  I understand that.  I understand that.  But

3    I'm working with a confused jury verdict, and basically giving

4    the defendant the benefit of the doubt that is created by the

5    confused jury verdict.  And it actually -- well, enough said

6    about that.  Let's proceed.

7          Next point?

8          MR. LAL:  Your Honor, despite sort of disagreeing with

9    that, if accepting the Court's analysis the Court comes out with

10   a level 36, criminal history category five, and I believe the

11   Court indicated, and if it did not, the guidelines range for

12   that particular intersection of criminal history category as

13   well as offense level is 292 to 365 months.

14         As indicated in our papers, we think that a life

15   sentence is appropriate, but given the Court's determination

16   that that's the applicable guideline range, the government would

17   ask the Court to impose the high end of that particular range.

18   That's step one of the sentencing process that the Supreme Court

19   has told us that we have to engage in.

20         In going through the 3553 factors, and as the Court

21   starts to consider Mr. Becton's conduct in this case, the length

22   of time that he was engaged in this profession -- and that's

23   what it was to him, was a profession.  He was a drug dealer, had

24   really no desire to be anything else.  I mean, as I indicated in

25   my papers, five months after the 2006 search warrants, he goes

1    out and he gets himself a job because, I would submit, he saw

2    the writing on the wall.  He knew what was coming down the pike,

3    it was just a question of when.  It could have been the day

4    after he got his job; it turned out that it happened in May of

5    2007, is when the series of arrests were made.

6          I'm reminded in considering Mr. Becton's case of

7    another defendant that I had.  And this individual said to me

8    during a conversation that we had, yeah, I sold drugs, but you

9    know what?  My family situation was such that I couldn't count

10   on my parents to take care of my younger siblings.  And

11   coincidentally, he was the oldest child in the family.  And so

12   what he did was he took to selling drugs, and that's how he

13   supported his family.  That was how he made sure that his

14   brothers and sisters had enough to eat, that they had clothes to

15   wear, that they went to school, that they lived a clean,

16   legitimate life.

17         The evidence in this case doesn't suggest that any

18   benefit that might have accrued to that individual ought to at

19   all accrue to Mr. Becton.  Mr. Becton, as the testimony in this

20   case at the trial established, invited, got his brother, his

21   younger brother who was a juvenile at the time, involved in the

22   drug trade.  He got his younger brother's best friend involved

23   in the drug trade.  The government also has evidence that he got

24   his own two children, or two of his children, involved in the

25   drug trade.

1          I'm also struck, as the Court considers Mr. Becton and

2    his particular individual circumstances, his history, his

3    characteristics, of Mr. Becton's use of violence and what that

4    says about him.  I'll direct the Court's attention to the

5    testimony that we heard during the trial of the incident that

6    happened out in California when he went out to purchase

7    kilograms of cocaine and to try to establish a connection out

8    there who would supply him regularly.

9          You'll recall that the testimony was that Mr. Becton

10   was in a vehicle, and the person -- somebody else who was in the

11   vehicle asked that the vehicle be stopped, and the person

12   stepped outside, I believe it was to sort of use the bathroom at

13   the side of the road or something to that effect.  But as the

14   person did that, Mr. Becton saw that that individual was armed.

15   That was it; the person was outside the car and had a gun in a

16   waistband or someplace else.  So what does Mr. Becton do?  He

17   pulls out his own gun and he starts shooting.

18         You'll recall there was a series of -- there was

19   testimony about Mr. Becton being shot; I think the person he was

20   with, Dre or Little Dre, was -- I don't remember whether he was

21   injured or not.  But Mr. Becton came back to Washington, and

22   there were pictures that were introduced into evidence of

23   Mr. Becton with a bandaged finger back in Washington shortly

24   after that particular incident.  I point to that incident in

25   addition to sort of the various acts of violence that were

1    articulated in the government's sentencing memo.

2           As the Court considers the history and characteristics

3    of this particular defendant, they all suggest that Mr. Becton

4    ought to be sentenced to, A, the highest sentence allowable

5    under the law; or B, at a minimum, the high end of the guideline

6    range that is applicable.

7           Your Honor, in the different cases that I've had before

8    you over the last X number of years, I've tried to always

9    present the government's position -- I've always tried to be

10   reasonable in my sentencing allocutions to you.  Not everyone

11   deserves a life sentence, and I've tried to take that position

12   before you.

13          I will say to you that Mr. Becton is one of the few

14   individuals that I've come across who deserves the absolute

15   highest punishment allowable by law.  The government believes

16   that that sentence ought to be life.  Accepting the Court's

17   analysis for purposes of this argument, that analysis leads to

18   the conclusion that Mr. Becton ought to be sentenced to

19   360 months.  Thank you.

20          MR. SUSSMAN:  Given the Court's rulings, I think I can

21   be fairly brief.  As I understand it, on the crack part of the

22   sentence, because of the enhancement that the Court found,

23   Mr. Becton faces zero to 30 years.  That raises the statutory

24   maximum.  And he faces 10 to life on the cocaine portion.  And

25   if probation thinks I'm wrong about that...

1          So the guidelines -- I'm not going to lecture the

2     Court.  The Court knows that the guidelines are a starting

3     point, and they're not -- by virtue of the Supreme Court's

4     ruling last week, they're not even considered presumptively

5     reasonable.

6          Most of the government's allocution about Mr. Becton

7     comes from events that were either the subject of acquittal,

8     subject of dismissed cases, or no case at all.  It hardly

9     seems -- it's indicative of a government belief that when a case

10    doesn't end in conviction, there's been a miscarriage of

11    justice.  The worst things they say about Mr. Becton are things

12    that never came through the courts as convictions.

13         I think the evidence fairly stated shows that

14    Mr. Becton was just one more small time drug dealer who carved

15    out a small niche on the courts on 4th Street.  Someone not

16    dissimilar from him probably had the same kind of niche on

17    6th Street; someone else had the same niche on Robinson Place.

18         The government projects large drug sales, but the

19    evidence shows absolutely nothing to indicate that Mr. Becton

20    was making real money in this endeavor.  He was at times a

21    hand-to-hand dealer by virtue of the evidence.  There's no large

22    seizures of cash, and the Court will recall that when he fell

23    into legal problems, he had to pass the hat to come up with

24    $12,000.

25         I'm always somewhat hesitant to suggest a number in

1    cases in which clearly my client is going to get a substantial

2    sentence.  But I would ask the Court to look into the 3553(a)

3    factors, and I certainly would -- the Court is well familiar

4    with them.  He's 35 years old, he has significant health

5    problems; he's got ulcerative colitis, and no one knows where

6    that will go, especially within the prison system.  The kind of

7    sentence that I know this Court is going to impose is one that

8    certainly will deter him and others from future conduct - and

9    these are sentences that are significantly below the guidelines,

10   I believe - would provide any necessary rehabilitation and would

11   serve the interests of justice.

12        I think that one of the things that the government did

13   not address in its sentencing memorandum, and I think it's kind

14   of one of the factors in 3553(a), is to avoid discrepancies

15   between similarly situated defendants.  I mean, that was the

16   whole purpose of the guidelines to begin with, and that's still

17   embodied in the statute.

18        In terms of what other defendants in this case received

19   and what the government sanctioned, basically, by plea offers --

20   and not all of the people who came before this Court were in the

21   same position as Mr. Becton in terms of their involvement, but

22   there were some that were.  And the principal ones, Willie Best;

23   Willie Best, in the government's view, and one the Court

24   adopted, was deserving of a sentence of 13 to 14 years;

25   Keith Sampler, who was a lieutenant in this organization and had

1    guidelines that I believe were at least as high as Mr. Becton's,

2    the government concluded that a 10-year sentence was the

3    appropriate sentence, and this Court ratified that sentence.

4    And 11(c)(1)(c), while it's a useful vehicle for resolving

5    cases, is not supposed to be a distortion of the realities of

6    the case.

7         And it's very troubling to me that Mr. Becton, because

8    he went to trial, is placed, in the government's mind, in a

9    20-year higher class, that the price for going to trial should

10   be so high.  It's kind of indicative of a government style that

11   you can either take what we offer, or, in poker terms, you're

12   all in.  You face life if you go to trial and lose, or you can

13   accept what we give, what we offer.  And it seems to be a

14   distortion.  I think the kind of sentence that would be --

15   clearly, our system has long embodied that you pay the price for

16   going to trial.  There's no free shots, so to speak.

17        And something above what Willie Best received, he was

18   similarly situated, he was involved in dog fighting, he had the

19   government issuing declinations of dog-fighting prosecutions, of

20   prosecution for weapons in Virginia, of prosecution for four

21   kilos in North Carolina, and so, in fairness, someone who is

22   considered to be the partner of my client received a sentence

23   that's substantially less than what the government is asking for

24   today.

25        I think that a sentence admittedly above that but below

1    the lower range of the guidelines is the appropriate sentence.

2    I'm not going to pick a number here, but I think that the Court

3    has a very good idea what kind of range I'm talking about, and I

4    think that all the statutory purposes would be served with a

5    sentence that would be well below the bottom level of the

6    guidelines.

7         THE COURT:  Does the defendant want to speak before

8    sentence is pronounced?

9         THE DEFENDANT:  Yes, Your Honor.  My lawyer tells me

10   there's not really too much I could say because of appeal

11   issues.

12        THE COURT:  Because of what?

13        THE DEFENDANT:  Appeal issues.  It's like I can't -- I

14   don't know.

15        But I would just like to say that I don't think it will

16   take the rest of my life to learn right from wrong, because I do

17   know right from wrong.  And that I just respectfully ask the

18   Court that -- just to take that into consideration and spare my

19   life.

20        THE COURT:  All right, sir.

21        THE DEFENDANT:  Thank you.

22        THE COURT:  First of all, I think in this particular

23   case the guidelines range contains within it a sentence that

24   satisfies all of the criteria of 18 U.S.C. 3553.  I hear the

25   government's argument that if anybody deserves a life sentence,

1    it's James Becton.  I have trouble with the idea that for street

2    drug trafficking of this kind, or even kilo quantity

3    drug trafficking of this kind, anyone who is not Rayful Edmond

4    deserves a life sentence.

5         This defendant is not Rayful Edmond.  He may have

6    aspired to be, but he wasn't.  He was a big deal on a couple of

7    blocks.  I don't mean to diminish or to downplay the seriousness

8    of his crime.  He clearly never did anything with his life

9    except deal drugs, was in prison at least twice for it, didn't

10   learn then right from wrong; unbelievably was involved in

11   smuggling drugs in and out of a federal prison down in

12   Virginia - I hope we haven't heard the last of that one - and

13   has done nothing to demonstrate that he is entitled to any

14   leniency from the Court.

15        But frankly, the question in my mind is for a man who

16   is -- how old are you, 35?

17        THE DEFENDANT:  34, Your Honor.

18        THE COURT:  34 years old, how long is it before he's

19   basically no threat to the community when he's locked up?  All

20   of the recidivism data show that after about 50, even

21   James Becton is no threat to the community.

22        Mr. Becton, you need to hear what we mean by threat to

23   the community.  We don't mean you're out shooting people in the

24   community, but you're spreading poison among your community.

25   That's what you've done, and that's why you were a threat to the

1    community and that's why you need to be removed from the

2    community.  Poison among your own people.

3         But a sentence that ensures that a man is so old that

4    he kind of hobbles out of prison leaves a human being in prison

5    with no hope.  It imposes enormous additional costs on the

6    prison system for dealing with patients who have medical needs

7    in their old age, and my decision in the case of James Becton,

8    really based most importantly on his age and the age he would

9    expect to be when he gets out of prison, is that a sentence of

10   25 years is sufficient to satisfy the statutory elements.  And

11   anything above that, frankly, gets into score keeping, which is

12   not my bailiwick.

13        It is the judgment of the Court that you, James Becton,

14   are committed to the custody of the Bureau of Prisons for a term

15   of 300 months.  This sentence includes a term of 300 months as

16   to count one, and as to each of counts 20, 29, 47 through 49, 51

17   through 53, 56 and 58, 96 months; each of those sentences to run

18   concurrently with one another and with the 300 months imposed on

19   count one.

20        And you are further sentenced to serve a 120-month term

21   of supervised release, which consists of 120 months as to count

22   one, 36 months as to each of counts 20, 29, 47 to 49, 51 to 53,

23   56 and 58.  All of these terms of supervised release are to run

24   concurrently with each other.

25        And you must pay a special assessment, because of the

1    11 counts of conviction, of $1,100.  The Court finds that you do

2    not have the ability to pay a fine, and therefore the imposition

3    of a fine is waived.  But the special assessment is immediately

4    due to the Clerk of this Court.  You are to make payments on the

5    special assessment through your participation in the Bureau of

6    Prisons Inmate Financial Responsibility Program.  And I'm sure

7    that will be paid off within 25 years, but if it's not, then

8    after your release from prison, if it's not paid within 30 days

9    of any change of address, you are to notify the Clerk of Court

10    until such time as your financial obligation is paid in full.

11            You are to report in person to the probation office in

12    the district to which you are released within 72 hours of

13    release from custody.  While on supervision you are not to

14    possess a firearm or other dangerous weapon; you are not to use

15    or possess an illegal controlled substance; you are not to

16    commit another federal, state, or local crime; you shall also

17    abide by the general conditions of supervision adopted by the

18    probation office, and several special conditions:

19            You must submit to the collection and use of DNA

20    identification information while incarcerated, or if not while

21    incarcerated, then at the direction of the probation office; you

22    are to participate in an educational or vocational skills

23    program, if necessary, as approved and directed by the probation

24    office; you are to participate in and successfully complete a

25    residential and/or outpatient substance abuse treatment program

—20

1     if and as approved and directed by the probation office.

2            The probation office is to release the presentence

3     investigation report to all appropriate agencies in order to

4     execute the sentence of the Court; treatment agencies are to

5     return the report to the probation office upon the completion or

6     termination of treatment.

7            Mr. Becton, you have the right to appeal this sentence.

8     If you choose to appeal, you must do so within 10 days after the

9     entry of judgment in your case.  If you are not able to afford

10    the cost of an appeal, you may request permission from the Court

11    to appeal at the expense of the government.  That is the

12    sentence of the Court.

13           MR. SUSSMAN:  Could I ask the Court, Mr. Becton's

14    medical condition has been somewhat in flux.  I wonder if the

15    Court could recommend that he be referred to a federal medical

16    facility, at least initially, to get a handle on where he stands

17    physically.

18           THE COURT:  We will include that recommendation in the

19    J&C.

20           MR. LAL:  Actually, Your Honor, it would be the

21    government's position that the Bureau of Prisons can make that

22    determination.

23           THE COURT:  They will make that determination.  I can

24    make the recommendation; they'll make the determination.  I have

25    really nothing to say about it, but there's no harm in my making

21

1    the recommendation.

2           If there's nothing further, counsel are excused.  Good

3    luck to you, Mr. Becton.

4           THE DEFENDANT:  Thank you, Your Honor.

5           (Proceedings adjourned at 12:04 p.m.)

6

7

8                **CERTIFICATE OF OFFICIAL COURT REPORTER**

9

10          **I, Rebecca Stonestreet, certify that the foregoing is a**

11   **correct transcript from the record of proceedings in the**

12   **above-entitled matter.**

13

14

15

16   _____          _____

17   **SIGNATURE OF COURT REPORTER**                    **DATE**

18

19

20

21

22

23

24

25