IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Docket No. 1:07cr131-01 |
| v. : | |
| : | |
| JAMES BECTON : | |
| : | |
| Defendant : | |

### DEFENDANT'S SUPPLEMENTAL MEMORANDUM

JAMES BECTON, through counsel, hereby files this Supplemental Memorandum regarding the application of 18 U.S.C. §3582(c)(2) to his case pursuant to this Court's Memorandum Opinion and Order of 23 October 2020.

## I. Background

Mr. Becton was indicted, tried, and convicted for a conspiracy under 21 U.S.C. §846 to violate 21 U.S.C. §841(a)(1) and (b)(1)(A)(ii) and (iii). He also received an enhancement under 21 U.S.C. §851. The conspiracy count in his indictment charged an agreement to distribute and to possess with intent to distribute cocaine base, cocaine, and cannabis. Other, separate counts of the indictment charged individual sales and there were a series of counts charging unlawful use of a communication facility. A multiple drug conspiracy was charged in one unified count. Mr. Becton was convicted by a jury of the multiple drug conspiracy in count one and of various other counts.

He was sentenced on 5 February 2009 after the Court resolved various objections and Guideline issues. Mr. Becton received a sentence of 300 months for the multiple drug conspiracy in count one. That sentence was based on a Guideline calculation which included an Offense Level of 30 after a finding that he distributed between 3.5 and 5 kilos of cocaine; a two level increase for a weapons charges; and a four level increase for a leadership role. The total Guideline calculation was Level 36. His Criminal History was V. A 1992 conviction for "attempted" possession of cocaine with intent to distribute, which was set aside and for which he was unconditionally discharged, added one point to the Criminal History calculation making it 10 and not 9. See PSR paras. 108(a) and 114. That Guideline score yielded a Guideline sentencing range of 292 to 365 months.

Although convicted and sentenced for a conspiracy that included the distribution of and possession with intent to distribute cocaine base, the Guideline sentence was actually calculated on the drug weight of cocaine powder, not cocaine base. Sentences on the other counts were 96 months for each to run concurrently with the 300 month sentence in count one. The 300 months sentence exceeded the mandatory minimum of 20 years required under 21 U.S.C. §841(b)(1)(B) per 21 U.S.C. §851.

2

After Mr. Becton filed his Motion for relief seeking a resentencing under the First Step Act and an amended sentence under 18 U.S.C. §3582(c)(2) on 23 April 2020, a briefing schedule was ordered. The prosecution filed their response on 1 May 2020 and the defense reply was filed on 7 May 2020.

This Court denied relief in an Opinion and Order of 23 October 2020. The Court found that, although Mr. Becton was charged with, convicted of, and sentenced for a conspiracy which included intent to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §841 (b)(1)(B)(iii), he was not eligible for consideration under the First Step Act because the sentence (imposed on him for the conspiracy) was based on the cocaine powder for which he was accountable, rather than the cocaine base part of the conspiracy. *See* Opinion at 5, 6. Eligibility was tied to the statute on which the penalty was calculated rather than all of the statutes of conviction. *Id.* That Opinion principally relied on the 2019 decision in *United States v. White*, 413 F.Supp.3d 15 (D.D.C. 2019). In that case, the Court held that "In fact, assessing eligibility based on the 'actual' statutory violation for which a sentence was imposed is more consistent with an 'actual' violation here" in the statute. *Id.* at ** 44.

3

The *White* decision is now on appeal and pending a decision by the United States Court of Appeals for the District of Columbia in Case No. 19-3058. It was the subject of oral argument on 15 October 2020. Prior to oral argument, the government filed with the Court of Appeals a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure. (See Attachment A - letter of 5 October 2020.) In their letter the government changed its position on eligibility for relief under the First Step Act. Their change in position was, as the letter states, based on a revised policy in the Department of Justice which evolved from a decision in the Eleventh Circuit Court of Appeals in *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020).

*Jones* held that eligibility for consideration under the First Step Act depends on the offense conduct as shown in the charging document, jury verdict, sentencing record, and final judgment. *Id.* at 1300, 1301. That court went on to hold that a finding of relevant conduct, such as drug weight for sentencing, is not relevant to a determination of eligibility under that Act. *Id.* at 1801. Drug quantity, which affects or even controls sentencing, does not affect the determination of whether a defendant is eligible under the Act. If he was actually convicted of and sentenced for a covered offense, such as 21 U.S.C. §841(b)(1)(B)(iii) in this case, then he is eligible. *Id.* At oral argument in the Court of Appeals in the *White* case, the government purportedly

4

conceded that Mr. White was convicted and sentenced for a covered offense, regardless of which drug or conduct drove the Guideline calculations and the actual sentence imposed. The key to eligibility, according to the revised policy, appears to be is whether there is a conviction for an offense which is a "covered offense" even if Guideline calculations from another offense determined the penalty imposed. That would be consistent with the holding in *Jones, supra*. The government, in *White*, maintained, nonetheless, that it was not appropriate for the district court to exercise its discretion to reduce Mr. White's sentence, eligibility notwithstanding. There has yet to be a decision by the Court of Appeals in *White*.

This is not offered to quarrel with this Honorable Court; rather, it is intended to update this Court on the status of the *White* case, as counsel knows it at this time. Were the decision in the appeal of the *White* case to adopt *United States v. Jones, supra*, Mr. Becton, in that circumstance, would be eligible under the First Step Act for imposition of a reduced sentence. Frist Step Act §404(b), 132 Stat. at 522. In that event, Mr. Becton would request leave of Court to address the impact of such a decision on his case.

## II.     18 U.S.C. §3582(c)(2) and the Amendment to F.S.G. §2D1.1

In the Opinion and Order, this Honorable Court offered the defense an opportunity to file a supplemental memorandum expanding its position in its Motion on the application of 18 U.S.C. §3582(c)(2) to this case. This Memorandum offers that expansion on behalf of Mr. Becton. According to §3582(c)(2), district courts are authorized to modify a sentence previously imposed if it was imposed based on a Guideline which has since been changed by the Sentencing Commission pursuant to 28 U.S.C. §994(o). The Sentencing Commission, in Amendment 782 in 2014, amended the cocaine powder Guideline on which this sentence was based pursuant to 28 U.S.C. §994(o). The amendment is applicable retroactively. U.S. Sentencing Guidelines Manual §1B1.16(d) (U.S. Sentencing Commission 2018). That amendment reduced the Guideline Offense Level on which Mr. Becton's sentence was calculated by two levels. According to the recent Report from Probation, the reduction lowers the calculation by 57 months.

At the time of sentencing, F.S.G. §2D1.1(c)(5), the applicable drug Guideline, assigned a Level 30 to more than 3.5, but less than 5 kilograms of cocaine powder. At his sentencing the Court specifically found that Mr. Becton was to be held accountable for between 3.5 and 5 kilograms of cocaine powder. (Sent. Tran. at 4). The amount of cocaine base was found to be

6

between 0 and 5 grams. (Sent. Tran. at 8). Powder cocaine, therefore, drove the sentence calculation even though there were three drugs - cocaine powder, cocaine base, and marijuana - involved in the conspiracy for which he was convicted and sentenced. Pursuant to F.S.G.§2D1.1(c)(5) the powder cocaine weight, as said above, placed Mr. Becton's base Offense Level at level 30. Two more levels were added for a weapon per §2D1.1(b)(2), and four more for a leadership role per §3B1.1(a). His total Offense Level was determined to be level 36. His Criminal History was calculated to be V resulting in a Guideline recommended sentencing range of 292 to 365 months. He was sentenced to 300 months for the multiple drug conspiracy in count one and to 90 months for each of the other counts, to run concurrently with the sentence for count one. The total sentence exceeded the then existing enhanced mandatory minimum.

In April 2014 the Federal Sentencing Commission, pursuant to 28 U.S.C. §994(o), proposed Amendment 782 to the Guidelines and it was accepted. As a result of that Amendment, more than 3.5 but less than 5 kilograms of cocaine powder was removed from F.S.G.§2D1.1(c)(5) and was placed in F.S.G.§2D1.1(c)(6). That changed the Guideline Offense Level to 28 from 30. There is now a two level reduction in Mr. Becton's drug quantity base Offense Level under the Guidelines as Amended. Level 28 results in a

7

total Guideline level of 34 after adding the two level adjustment for a weapon per F.S.G. §2D1.1(b)(2), and four levels for role in the offense per F.S.G. §3B1.1(a). A level 34 offense, with a Criminal History of V, yields a Guideline recommended sentencing range of 235 to 292 months. In the initial Pre-Sentence Report the Criminal History points were scored at 9. PSR para.114. His 1992 attempted possession did not then give him an additional point. PSR para.108a. Later, that one point was added, resulting in a score of 10 with a Criminal History of V. That juvenile diversion of a 1992 offense of "attempted" possession with intent under the Youth Act overstates his criminal history. He was a youth and that case was an inchoate offense which is not the same as an actual possession with intent to distribute or actual distributions. See, Attachment B – final disposition.

That one point is the difference between a Criminal History of IV and V. At his age, in 1992, his physical brain was not fully developed and his responsibility was not at the same level as a male over 22 years of age. Young girls, unlike young boys, develop their physical brain at an earlier age and have more maturity and self-control than do males. *See*, e.g., *Thompson v. Oklahoma*, 487 U.S. 815, 834-37 (1988); *Roper v. Simmons,* 543 U.S. 551 (2005). To be sure, this is a matter of this Court's discretion, but to exercise that discretion would, it is respectfully suggested, be appropriate in this case

8

if a resentencing is to take place. It is also suggested that informing this decision ought to be the fact that Mr. Becton is in a prison environment where his susceptibility to COVID-19 is higher than it is for inmates in otherwise good health. The outcome of COVID-19 for him would likely be fatal given his compromised immune system, anemia, asthma, and ulcerative colitis.

A high-end sentence under the today's applicable Guidelines would yield a sentence that is less than the 300 months for which he was originally sentenced. A high-end sentence, however, was not found by his sentencing Court to be appropriate for him in February 2009 and respectfully, would not be appropriate now. The recent PSR of 7 December 2020 also notes that a low-end sentence is required.

During his 2009 sentencing hearing, the Court correctly recognized that Mr. Becton was engaged in street level activity. He was not a large quantity, wholesale distributor. His was not a major, large scale or large geographic area operation. He was basically a neighborhood street dealer. Not that he did not do wrong, but he was small-time, as the Court correctly found in 2009. Now, in 2020, he is over 46 years old, continues to suffer from asthma, and has a compromised immune system due to medication he must take. Asthmatics do not stand up well to COVID-19. Those with a

compromised immune system are more vulnerable to COVID-19 than are others. As a prison inmate, he is at significant risk at this time.

After James Becton was charged in May 2007, he served 21 months custody in the close confines of jail before sentencing in February 2009. That is tough time. His mandatory minimum sentence under the 21 U.S.C. §851 enhancement for the violation of 21 U.S.C. §841(b)(1)(A)(ii) was then 20 years, but it is now lower, having been reduced by Congress. The 7 December 2020 PSR at 3 notes he now has a 120-month mandatory minimum. He has served approximately 13 years of his total sentence at this point in time. Given the changes in drug sentencing law through the Fair Sentencing Act and the First Step Act, as well as the Amendments to the Guidelines such as Amendment 782, it is clear that Congress and the Commission intend that sentences, such as in this case, be reduced.

The language of 18 U.S.C. §3582 (c)(2) is plain and clear. If the Sentencing Commission, pursuant to 28 U.S.C. §994(o), has lowered the Guideline sentencing range on which a defendant was previously sentenced – as occurred here – then "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) ...." This may be done on the motion of the defendant. Mr. Becton has filed such a motion. It is hoped that this Supplemental Memorandum has brought clarity to his

request. This Court is asked to exercise its authority and resentence Mr. Becton under the current law.

### III.   The §3553(a) Factors

A cardinal purpose of 18 U.S.C. §3553(a) was to even out sentences using a common set of factors. Its goal is not a heavy-handed, long term sentence as evidenced by the very first sentencing consideration mentioned in this statute. A guiding principle for sentencing under §3553(a) is that a sentence should not be greater than necessary to comply with the four factors in sub-section (2). Current Congressional and Commission intent that sentences previously imposed under the former drug Guidelines and statutes be reduced and, thus, are not greater than necessary is clear from the Fair Sentencing Act and the First Step Act, as well as Amendment 782, and their retroactive application. This Court is respectfully asked to amend Mr. Becton's sentence using the current, new Guidelines and statutory amendments. That would not only be consistent with the apparent intent of Congress and the Commission but it would also be in line with the current nationwide recognition that the drug war's harsh, long sentences are not producing beneficial results. A new sentence is consistent with the goals and intent of §3553(a).

Under §3553(a)(2)(A), a just punishment which promotes respect for the law would be a new sentence under the current Guidelines and statute. Congress and most of the legal and political community involved with criminal drug law has come to recognize that our national infatuation with long, draconian sentences in drug cases is counterproductive to the goal of reducing drug abuse. The understanding on both a federal and state level that the initiation of drug courts and that alternative as well as lesser sentences are better suited to achieve successful results for our drug problem shows the shift to what works in actuality and the rejection of a policy that has not been shown to achieve its objective. This movement away from long prison sentences as the magic cure to our problem is what the retroactive changes intended to achieve. A telling example of how the shift away from long sentences is more effective is how Texas and New York both reduced, significantly, their rate of recidivism and their prison populations by reducing penalties for drug offenses. Other states are following suit, but Texas and New York were, as unlikely as some might think, the first. They made a practical decision and they have seen the benefit of the changes.

The goal of §(2)(B) is adequate deterrence. That goal has not been realized by the use of extremely long sentences. Such sentences have not proven to be a success in this regard. While the United States has only 5% of

12

the world's population, we have 25% of the world's prison population. Drug offenses account for a significant portion of our very large prison population. Had long incarceration been the magic panacea touted by many as a deterrence, our drug problem would be long gone, but it is not. Empirically, shorter sentences followed by post release help, counseling, and monitoring have, in practical terms, proven to be more effective.

In actuality, one of the more proven deterrents with established effectiveness is the guarantee of being caught. During holiday seasons, for example, when roadblocks and intense enforcement is publicized, the incidence of DWIs goes down. It is the likelihood of being caught rather than the severity of the penalty that effectively deters. Once caught, it has been shown that treatment, counseling, and shorter sentences bring better results than long-term confinement. The approach of moving away from imposing decades of incarceration has been shown to reduce recidivism and benefit society.

Subsection (2)(C) focuses on protecting the public from future crimes of a defendant, but James Becton, is now over 46 years of age. Of equal importance is his ill health. He has asthma and a compromised immune system. After 13 years in prison and given his current health he does not poses a danger to the public of going back to his old ways on the street. His

13

medical situation places him at serious risk as an inmate in this Pandemic. We average 200,000 new cases a day and approximately 3,000 deaths per day. Even with the existence of vaccines, this will not abate until the middle of 2021 at the earliest and according to many experts it will be much later.

Importantly, in these times of COVID-19, §(2)(D) would support his resentencing under the current law. Asthmatics and those with compromised immune systems do not fare well with COVID-19. In addition to the asthma he has ulcerative colitis, which requires him to take a medication called Mesalamine three times daily. That medication suppresses his immune system, making him more vulnerable. In addition to these conditions, he also suffers from anemia. Individuals in his medical status are more prone to contracting COVID-19 than others in the general population. There is a much more serious risk to those in the close confines of prison than in the general population. Prisons are an incubator, and testing in that system cannot be as consistent nor sufficiently widespread as it ought to be due to the nature of prison itself. There are natural problems in controlling this Pandemic in a prison which are inherent in what it takes to operate a prison. That is not a matter of fault, but it is a matter of practicality. As the Country is in the throes of a massive resurgence, Mr. Becton's risk factor has gone up.

14

As was recognized and stated at the original sentencing, this is not the case of a major drug lord or kingpin. He did wrong, has paid a serious price (13 years is no small thing), is older, at 46, and in ill health. Amending Mr. Becton's sentence is compatible with the public interest, as evidenced by how the Country has shifted gears away from long terms of massive incarceration for decades as a way to better solve our drug problem. Applying the new Guidelines and statutory provisions as a starting point is consistent with Congressional intent, as well as the national recognition that long harsh sentences are not the solution to our drug problem. Many recognize that such long sentences are counter-productive. Amending Mr. Becton's sentence would provide Mr. Becton with a chance at a better future and help avoid a potentially devastating illness. A reasonable amended sentence would be fair, just, and compatible with the goals of sentencing. It would also better protect his health. His current Guidelines with a Criminal History of V are 235 to 293 months. Were his Criminal History reduced by the one point, to IV, his Guidelines would be 210 to 262 months. His current mandatory minimum has also been amended and reduced. An amended sentence, limited to the bottom of the amended Guideline range, would be fair, would comply with the intent of Congress and the Commission, and would promote

respect for the law.  This Honorable Court is asked to exercise its authority and discretion to give James Becton an amended, reduced sentence.

JAMES BECTON
By Counsel

_____/S/_____
MARVIN D. MILLER
V.S.B. No. 1101
Counsel for Defendant
1203 Duke Street
Alexandria, Virginia 22314
P: (703) 548-5000
F: (703) 739-0179
ofc@mdmillerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, sending a notification of such filing to the Office of the US Attorney.

_____/S/_____
MARVIN D. MILLER



U.S. Department of Justice

Michael R. Sherwin
Acting United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

October 5, 2020

Mark J. Langer, Clerk
United States Court of Appeals for
the District of Columbia Circuit
333 Constitution Ave., NW
Washington, D.C. 20001

    Re:    *United States v. Antone White*, No. 19-3058
            *United States v. Eric Hicks*, No. 19-3059
            Panel: Judges Tatel, Garland, Edwards
            Oral Argument Scheduled: October 15, 2020

Dear Mr. Langer:

      On October 1, 2020, the Department of Justice issued revised guidance regarding the appropriate interpretation of Section 404(a) of the First Step Act of 2018. Consistent with the Eleventh Circuit's construction of that provision in *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020), the government's revised position is that the term "covered offense," as defined in Section 404(a), refers to any pre-Fair Sentencing Act violation of 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii), 960(b)(1)(C), or 960(b)(2)(C).

      While we argued in our brief (at pages 40-43), pursuant to prior DOJ policy, that Counts 1, 5, and 18 were not "covered offenses," the revised policy instructs us to withdraw that argument, and we now concede that appellants' offenses were "covered offenses." We do not agree with the district court that relief was unavailable to appellants under Section 404(b) because of the actual quantity of crack cocaine involved in their offenses; as we explain (at page 56 n.22), the position of the Department of Justice is that Section 404(b) contemplates determination of the statutory penalty range based on the quantity of crack cocaine reflected in the jury verdict or admitted by the defendant in a guilty plea. However, for the reasons discussed on pages 32-40 of our brief, we continue to defend the district court's alternative ruling that, assuming relief were available, the court would exercise its discretion to deny sentence reductions in light of the 18 U.S.C. § 3553(a) factors.

1

        Sincerely,

        Michael R. Sherwin
        Acting United States Attorney

By:  _____/s/_____
        Elizabeth Gabriel
        Assistant United States Attorney