IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Docket No. 1:07cr131- 01 |
| : | |
| JAMES BECTON : | |
| : | |
| **Defendant** : | |

## MOTION FOR APPROPRIATE RELIEF
## UNDER 18 U.S.C. §3582(c)(1)(A)

James Becton, through counsel, requests this Court to exercise its discretion under 18 U.S.C. §3582(c)(1)(A) and grant him a modification of his term of imprisonment based on his physical and medical condition. Mr. Becton is 47 years old and suffers from HIV as well as chronic ulcerative colitis and anemia. His medical conditions are serious and place him at greater risk to become infected with COVID-19 than most others. Although COVID-19 is in somewhat of a remission with the general population, it is far from being under control. The new DELTA variant is extremely contagious. It causes a more serious version of this illness. Mr. Becton's medical conditions make him unusually susceptible to the disease and to a bad outcome if he contracts it. This Court has been authorized by Congress to exercise its own discretion and grant him the relief sought.

## I. Background.

Mr. Becton is now 47 years old and has served 14 years, which is over 50% of his sentence. His sentence was reduced from the original 300 months imposed in February 2009 to 246 months in May 2021 due to changes in applicable sentencing laws. The underlying case was a drug conspiracy with multiple related telephone counts for which he was tried and convicted.

At his age, he has essentially aged out of what some academics might term his "crime years". What that means is that, at his age, the likelihood of his continuing to engage in criminal activity is negligible. That fact is bolstered by his support from CURE, which, after looking into his current development, has determined that he is someone who can help them in their mission of deterring young people from going down the wrong path. (See Attached.) CURE will help sponsor him upon his release so that he can engage in mentoring young people to teach them not to do what he had done when he was a young man so many years ago. His maturity and the change in his life has led them to want to avail themselves of the perspective on life he has gained while in prison to help prevent young people of today from becoming the way he was back then in his younger days.

## II.     The Framework of 18 U.S.C. §3582(c)(1)(A).

When the First Step Act was passed, it amended 18 U.S.C. §3582(c)(1)(A) to allow the district courts to make their own independent determinations about releasing an inmate under its provisions. The new requirement is that an application under this statute be made to the Warden and, if there has been no action within 30 days of the application, then a trial court is authorized to exercise its discretion and make its own decision concerning modification of the term of imprisonment. Part of the impetus behind the Congressional change in §3582(c)(1)(A) was that the Bureau of Prisons so poorly managed the compassionate release process and failed to establish timeline standards for reviewing prisoner requests, that Congress felt compelled to allow courts to intervene in the process when a 30-day period had lapsed after the application to the Warden, and the Warden had taken no action.[1] See *United States v. McCoy,* 981 F.3d. 271 (4th Cir. 2020). That was a compassionate release case but it was not grounded in medical circumstances. It did, however, address the authority granted by Congress's amendments. District courts are now "empowered … to consider any extraordinary and compelling reason for release that a defendant might

---

[1] Mr. Becton made an application to the Warden at FCI Hazelton more than 30 days ago and has received no response. (See attached Application).

raise." *McCoy, supra*, at 276.  (Citing to *United States v. Zullo*, 976 F.3d. 228, 230 (2nd Cir. 2020).  The Bureau of Prisons is no longer the gatekeeper.

### III. James Becton's compromised immune system and health place him at great risk.

While there is general understanding that the COVID-19 Pandemic has been brought under greater control in the general population than it was just six or eight months ago, that does not mean that the disease is under control, nor that it has reached the point where there is no longer any danger from it.  In fact, the new DELTA variant from India seems to have taken hold within the United States.  It forced postponement of England's intended lifting of restrictions.  It is more virulent in that it is more easily spread, and, when an individual becomes ill with it, the sickness is more severe.  That poses a greater threat for Mr. Becton than others because he is an inmate and because his HIV condition places him in a situation where his auto-immune disease makes him more susceptible than most others.  Although HIV is somewhat controllable, it is clearly not curable.  It is an illness which affects the auto-immune system and the consequence of that is a significantly higher risk for contracting COVID and having a bad outcome.  His chronic ulcerative colitis is another indicium of his poor health as is his anemia.

**IV.     Modification is Consistent with §3553(a).**

Modifying Mr. Becton's term of imprisonment would be consistent with §3553(a)(2)(D)'s recognition that sentences should include consideration of the need for medical care. Medical care in the prison environment is nowhere near that available on the outside.  His chances of avoiding COVID-19, the DELTA variant, and surviving it if he becomes infected are far greater for him if he is not in prison.  The provisions of §3553(a) mitigate in favor of granting the relief sought.  §3553(a) is to be considered under a §3582(c)(1)(A) motion.

Factors under §3553(a) such as the need to protect the public from future crimes, (a)(2)(C), is apropos because, given Mr. Becton's age, the need to protect the public from future crimes by him is not something which should cause concern.  In this regard, CURE's willingness to take him in and their wish to have him help with their program is not insignificant.  They are experienced and their confidence in him bears consideration.  Deterrent to criminal conduct for others is, likewise, not a §3553(a) factor which should lead to denial of this motion because he has not only served 50% of his sentence, been in prison for 14 years, and attained the age of 47, but he has become someone who can assist in achieving deterrence by accepting the position offered by CURE and helping to deter others before they enter into

the wrong path that he had when he was a young man and which led him to his current predicament.

The just punishment factor regarding the seriousness of the offense in (a)(2)(A) is something prosecutors usually argue. That consideration has long been greatly touted as a basis for long sentences and not giving individuals a break, but it has proved, in practical terms, to be ineffective. It has resulted in massive incarceration of many people for extremely long sentences to no good result. Our Country is noted for having 5% of the world's population and having created 25% of the world's prison population. Our massive incarceration and War on Drugs has put a great many people away for very long times, but has had little effect and almost no salutary impact on the nation's drug problem. The resources spent to keep him in prison would be put to better use if he were to allow released so that he could obtain medical care in a healthier environment than prison while at the same time helping mentor others to deter them from a future life of crime by working with CURE. The executive branch, weaned on the Guidelines since 1988, and its deeply entrenched approach of extremely long sentences for solving society's problems resulted in Congress amending application of compassionate release by authorizing courts to make the decision. The American people, for whom the government works, through Congress, have been steadily moving to curtail the "War on Drugs" and curb its draconian approach to society's ills.

This statutory scheme allowing release in situations like those with Mr. Becton is an example of that and this Court is respectfully requested to exercise its discretion and grant him the relief to which he is entitled.

Upon his release, Mr. Becton could live with his fiancé Chantece Mendoza at 3416 4th Street SE, #520, Washington DC 20003.  He would be working with the non-profit CURE for Violence in the Streets of Washington to prevent today's young people from following the bad path on which he embarked many years ago when he was a young man.   He has a network of individuals who would help see that he was able to obtain the medical care he needs.  It takes little imagination to understand that such care would be far greater than that available in the Federal Bureau of Prisons for his unfortunate medical condition.

                                  JAMES BECTON
                                  By Counsel

_____/S/_____
MARVIN D. MILLER, ESQ.
The Law Offices of Marvin D. Miller
1203 Duke Street
Alexandria, VA 22314
ofc@mdmillerlaw.com
703 548-5000
703 739-0179 fax

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, sending a notification of such filing to the Office of the US Attorney.

_____/S/_____
MARVIN D. MILLER