UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JAMES BECTON, <br><br> Defendant. | Case No. 07-cr-00131 (TNM) |

### MEMORANDUM ORDER

James Becton is serving over 20 years in prison for conspiracy to commit a controlled substance offense and related crimes. Last year, he sought compassionate release from prison, claiming his health conditions make him particularly susceptible to COVID-19. The Court denied his motion. Becton now asks this Court to reconsider. And while that motion was pending, he filed another compassionate-release motion.[1] Because he fails to establish either extraordinary and compelling reasons for a sentence reduction or that the § 3553(a) factors favor a reduction, the Court denies both of Becton's motions.

### I.

For over ten years, James Becton led a drug ring in Washington, D.C. Mem. Order at 1–2, ECF No. 330.[2] He eventually became the "exclusive wholesale cocaine and crack distributor for the street level sellers." *Id.* at 2. And witnesses testified that he shot at least one person for

---

[1] The Court understands this as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In Becton's "Applicable Law" section, he states the standard for compassionate-release motions, refers to motions for compassionate release," and cites the compassionate-release provision (§ 3582(c)(1)(A)). Mot. for Comp. Release (MCR2) at 3, ECF No. 617. Plus, he devotes nearly all his brief to arguing in the compassionate-release framework.

[2] All page numbers refer to the pagination generated by the Court's CM/ECF system.

encroaching on his territory and that he got in a gun fight in California during a drug deal gone wrong. *Id.* at 3.

A grand jury indicted Becton for conspiracy to sell and possess drugs. *United States v. Becton*, 601 F.3d 588, 593 (D.C. Cir. 2010). And he was also charged with many counts relating to the unlawful use of a phone in that conspiracy. *Id.* A jury convicted Becton on the conspiracy count and ten of the phone offenses. *See* Verdict Form, ECF No. 248. Then the trial judge sentenced Becton to concurrent 25-year terms for each offense and ten years of supervised release. Sentencing Tr. 18:13–24, ECF No. 347.

Last year, Becton moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. for Compassionate Release (MCR1), ECF No. 600. He argued that his health conditions—chronic ulcerative colitis and anemia—make him particularly susceptible to COVID-19 and that his prison cannot provide him adequate healthcare.[3] *See id.* at 4.

The Court denied Becton's motion for compassionate release. Mem. Order at 9 (MCR Denial), ECF No. 611. It found that Becton had not adequately shown that his health conditions would cause him to "suffer[] more severe [COVID] symptoms." *Id.* at 4. Plus, Becton had offered "nothing to contradict" his prison's "substantial steps to reduce the risk of Becton's exposure to the virus." *Id.* at 5. And last, the Court found that the § 3553(a) factors cut against releasing him. *Id.* at 6.

Becton then moved for reconsideration of that decision. *See* Mot. for Recons. (MFR), ECF No. 616. And he moved again for compassionate release while his motion for

---

[3] Becton first claimed that he suffers from HIV as well. But in his Reply, Becton admitted that he does not. *See* Reply at 1, ECF No. 608.

reconsideration was pending. *See* Mot. for Comp. Release (MCR2), ECF No. 617. Both motions are now ripe.

## II.

Under 18 U.S.C. § 3582(c)(1)(A), a prisoner may to move to reduce his sentence. If he does, he bears "the burden of establishing that he is eligible for a" reduction. *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C.), *aff'd*, 825 Fed. Appx. 1 (D.C. Cir. 2020). To be eligible, the prisoner must exhaust his administrative remedies, *see* 18 U.S.C. § 3582(c)(1)(A), and then show either that he is older than 70, has served a minimum term for designated offenses, and is not dangerous to the community *or* that "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i), (ii). Finally, the prisoner must show that the § 3553(a) factors favor a reduction. *Id.* § 3582(c)(1). If he meets these requirements, then a court may reduce his sentence.

On a motion for reconsideration under Rule 59(e), the movant must point to a "change of controlling law, . . . new evidence, or the need to correct a clear error or prevent manifest injustice." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (internal citation omitted). These "disfavored" motions must be denied if they merely "raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.*

## III.

The Court considers both motions together because they fail for the same reason: Becton shows neither "extraordinary and compelling reasons" for early release nor that the § 3553(a) factors favor his release. And because Becton's motion for reconsideration fails to meet even the lower compassionate-release standard, it falls well below the higher reconsideration standard.

3

The Court assumes for purposes of this opinion that Becton has indeed exhausted his administrative remedies. He says that he filed a written reduction request with BOP and that BOP failed to respond within 30 days. MCR2 at 7; 18 U.S.C. § 3582(c)(1)(A).

### A.

Start with Becton's COVID claims. Those fall into two camps: his health issues make him more susceptible to COVID, and his prison has not done enough to protect him. But, even taken together, these claims do not make Becton's case extraordinary and compelling.

The recent pandemic alone is not an extraordinary and compelling reason for early release. *Cf. United States v. Jackson*, 26 F.4th 994, 1001–02 (D.C. Cir. 2022) (noting that if COVID counted, "we would have solved the overcrowding of prisons, as any prisoner could come asking for compassionate release"). And because "it is no longer early in the pandemic, . . . merely suffering from medical conditions linked to heightened COVID-19 risk is not sufficient on its own to warrant compassionate release." *United States v. Engles*, No. 19-cr-132 (JDB), 2022 WL 1062937, at *2 (D.D.C. Apr. 8, 2022) (cleaned up).

Thus, courts have denied compassionate release for prisoners with various health issues. *See, e.g.*, *Jackson*, 26 F.4th at 1002 (affirming denial for prisoner with obesity and sleep apnea); *United States v. Barron*, No. 95-cr-088-2 (PLF), 2022 WL 2383973, at *4 (D.D.C. July 1, 2022) (diabetes and obesity); *United States v. Martinez*, No. 05-cr-445 (RCL), 2021 WL 2322456, at *1 (D.D.C. June 7, 2021) ("obesity, a chronic respiratory infection," and past lung infections); *United States v. Houston*, No. 10-cr-265 (RCL), 2021 WL 860260, at *3 (D.D.C. Mar. 8, 2021) ("hypertension, an IVC filter," and only one fully-functioning lung).

This wariness tracks the statutory text, circuit precedent, and evolving COVID healthcare. Recall that courts may grant compassionate release only when a prisoner shows that

4

"extraordinary and compelling reasons" warrant it. As the D.C. Circuit has explained, an extraordinary reason "must be most unusual, far from common, and having little or no precedent." *United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (cleaned up). And a compelling reason must be "both powerful and convincing." *Id.* (cleaned up). The statute sets a high bar. So in most cases, suffering from common health problems during "a pandemic affecting not only the entire prison population, but the entire world," will not fit that bill. *Jackson*, 26 F.4th at 1002.

Making matters less extraordinary and compelling, prisoners can now obtain COVID vaccines. *See United States v. Edwards*, No. 03-cr-234 (JDB), 2022 WL 2866703, at *3 (D.D.C. July 21, 2022) (noting that the availability of vaccines "fundamentally changes the compassionate release analysis") (cleaned up). And they "have also been offered booster shots in accordance with CDC guidance." *See* COVID-19 Inmate Test Information, BOP, https://www.bop.gov/coronavirus (last visited January 6, 2023). It is no longer the early days of the pandemic when prisoners could do little to protect themselves.

Now, on to Becton's specific concerns.

**B.**

*Medical Conditions*. Becton argues that his various ailments justify compassionate release: his lack of a small intestine, increased risk of colon cancer, past use of experimental medications, ulcerative colitis, and anemia. MFR at 3–5; Suppl. Addendum at 2, ECF No. 616-1; MCR2 at 11. But these medical conditions are not extraordinary and compelling.

To start, the Court is skeptical that Becton has shown that each of these ailments makes him more vulnerable to COVID. But even if each does, the Court still finds that they are not extraordinary and compelling. Becton's heightened risk from COVID is neither "far from

common" nor "powerful and convincing." *Jenkins*, 50 F.4th at 1197.  Many medical issues appear to make people more susceptible to COVID, including common issues like depression, obesity, a lack of physical activity, smoking cigarettes, and drug abuse.  COVID-19: Medical Conditions, CDC, (Oct. 19, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  So, far from extraordinary, Becton's situation is lamentably common.  And thus, it is not "extraordinary."

Nor is the Court swayed by Becton's explanation that the recent COVID BA.4 and BA.5 strains are the most contagious so far.  MCR2 at 8.  Assuming this is true, those variants threaten everyone, not just Becton.  So they place in him in no unique danger and thus do not make his situation extraordinary.

*Prison Conditions*.  Becton also tries to show that his prison's COVID measures make his situation extraordinary and compelling.  *See* MFR at 5–6; MCR2 at 9–10.  The Court disagrees.

Becton cites two inmate COVID deaths and prison quarantines.  MFR at 6.  And he says that prison guards flout the prison's masking policy.  *Id.* at 7.  But this does not make Becton's situation extraordinary.  Nor does staff's refusal to wear a mask.  None of this shows that he is in unique danger.

He also argues that his prison has not followed BOP guidelines, claiming that "[i]f the mitigating factors were actually being enforced, then . . . there should be minimal or no outbreaks at Becton's institution. . . .  This can be ascertained when looking to other institutions who are closely following the CDC's guidance."  MFR at 6.  Yet he never cites "the data," nor says which "other institutions" he is referring to.  And the Court is unconvinced that there would "be minimal or no outbreaks" if his prison enforced its COVID rules.

6

Becton resumes the same line of attack in his second compassionate-release motion with a new set of complaints about his prison: it provides too few masks and no "virus killing cleaning supplies," fails to randomly test prisoners, has a faulty ventilation system, and does not make "vaccinations readily available." MCR2 at 9.

Assuming this is true, it is still not extraordinary and compelling. For one, his prison's COVID precautions seem to be working. As of January 5, 2023, FCI Hazelton had only one reported COVID case. *See* COVID-19 Cases, BOP, https://www.bop.gov/coronavirus (last visited January 6, 2023). Plus, the prison's alleged failures affect its entire population, not just Becton. *See Taylor*, 2022 WL 16758469, at *3. So they are unlikely to be "extraordinary." [4]

## C.

Becton presses three more arguments to show that his case is extraordinary and compelling. None do.

*Sentencing error*. Becton claims that there was an error at his sentencing and that this counts as extraordinary and compelling. Not so. According to Becton, the sentencing judge considered a prior conviction that had been vacated, even though "there [were] no supporting facts, nor any evidence to support" that he had been convicted. MCR2 at 5. But even if Becton is right that the trial court erred, that error would not be extraordinary *or* compelling. The D.C. Circuit has expressly held as much: "legal errors at sentencing are neither extraordinary nor compelling." *Jenkins*, 50 F.4th at 1200 (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)).

---

[4] Becton also claims that his Eighth Amendment rights may have been violated when his prison halted hospital visits. But "a compassionate release motion . . . is not the appropriate mechanism or vehicle to raise . . . alleged constitutional violations." *Edwards*, 2021 WL 3128870, at *6.

7

*Changes in the law.*  Becton also raises a few points relating to changes in the law.  He first points to the First Step Act.  A few years ago, Becton moved to reduce his sentence under § 404 of the First Step Act.  *See* Mot. to Reduce Sentence Pursuant to First Step Act, ECF No. 587.  The Court declined, finding that Becton was not eligible under the First Step Act because his crime was not a "covered offense."  Mem. Op. and Order at 2, ECF No. 592.

Now, Becton argues that he was indeed sentenced for a covered offense, which would have allowed him to get a reduction under § 404 of the First Step Act.  *See* MCR2 at 2 ("It has been established though that Petitioner was sentenced for a 'covered' offense.").  Other courts, he says, have granted compassionate-release motions "where defendants were serving lengthy sentences for offenses that today would" yield shorter ones.  *Id.* at 5.

Assuming that Becton is right that his offense is covered under § 404, the Court still finds that this is not an extraordinary and compelling reason to grant compassionate release.  For one, the law already provides a different remedy for § 404 cases, First Step Act motions under 18 U.S.C. § 3582(c)(1)(B).  *United States v. Lawrence*, 1 F.4th 40, 46 (D.C. Cir. 2021) ("reductions under the [First Step] Act fall within 18 U.S.C. § 3582(c)(1)(B)").  The Court cannot find this reason extraordinary or compelling when the law already provides a different remedy.  *Cf. Jenkins*, 50 F.4th at 1200–01 (finding that legal errors at sentencing are not extraordinary or compelling and noting that they may be corrected through direct review or habeas).

More, Becton already had his shot: he moved for a sentence reduction under the First Step Act, and the Court found that he did not qualify.  Mem. Op. and Order at 2.  And the First Step Act bars him from moving for such relief again.  *See Concepcion v. United States*, 142 S. Ct. 2389, 2401–02 (2022) ("A district court may not consider a First Step Act motion if . . . the court [already] considered and rejected a motion under the First Step Act.").  While that does not

8

bar the Court from considering Becton's argument in the compassionate-release context, that limitation in the First Step Act cuts against granting relief here. Granting Becton compassionate release on these grounds would allow him to sidestep Congress's limitation and take a second bite at the apple.

And the fact that Becton is barred from again moving under the First Step Act does not make his case extraordinary and compelling. As the D.C. Circuit explained in *Jenkins*, "courts must exercise their [compassionate release] discretion consistent with all applicable statutory constraints." 50 F.4th at 1199. And thus, the Court cannot treat a procedural bar in the *First Step Act context* "as supporting a finding of extraordinary and compelling circumstances" in the *compassionate-release context*. *Id.* at 1201 (finding same with a procedural bar on habeas relief). That is, Becton cannot now get compassionate release because he is foreclosed from getting a reduction under the proper provision.

Becton also alludes to other changes in the law. Recall that Becton's sentence was enhanced based on an old, vacated conviction. Becton claims that "in accordance with changes in the law and fact, [that] conviction would not be used to enhance Becton's sentence today." MCR2 at 5. He also argues that based on "different courtroom rulings, . . . he would likely be found 'not guilty' of any of the enhancements [he] was saddled with." *Id.* at 13. And he notes that he "would mostly likely receive a . . . much shorter" sentence if he was convicted today because "the First Step Act was created and designed, in part, to reduce" crack versus cocaine disparities. *Id.*

To the extent that Becton means to point to non-retroactive changes to statutory law, his arguments fail. *See, e.g.*, MCR2 at 6 (arguing that courts can consider non-retroactive changes). That is because "there is nothing remotely extraordinary about statutes applying only

9

prospectively." *Jenkins*, 50 F.4th at 1198.  And if Becton means to refer to cases that retroactively rendered his sentence unlawful, those too "cannot support a grant of compassionate release." *Id.* at 1200.

*Reasonableness review*.  Finally, Becton says that "the Court failed to review [his] sentence" for procedural and substantive reasonableness.  MCR2 at 7.  But his out-of-circuit cases do not bind this Court.  *See, e.g.*, *United States v. Collington*, 995 F.3d 347, 358 (4th Cir. 2021).  Plus, Becton's cases concern the wrong type of motion; *Collington* sets forth the requirements for motions under the First Step Act, not motions for compassionate release.  *Id.* at 361 ("In light of the more robust nature of First Step Act proceedings, we also hold that they are most naturally reviewed for procedural and substantive reasonableness.").

In sum, none of Becton's arguments, individually or taken together, make his case for compassionate release extraordinary and compelling.

**IV.**

Even if Becton had established "extraordinary and compelling reasons" for his release, the § 3553(a) factors would still counsel against it.  None of his arguments tip that balance.

Becton points out that his codefendant plead guilty and received a shorter sentence, despite being a "co-leader" of their "drug organization."  MFR at 9.  He asks, "if the seriousness of Becton and his codefendant's crimes are satisfied with a 13-year sentence, then why wouldn't [his longer sentence]" be enough to satisfy the § 3553(a) factors?  *Id.* at 10; *see also* MCR2 at 12.  Because he and his codefendant are not similarly situated.  Section 3553(a) mandates an individualized inquiry.  Unlike his co-conspirator who accepted responsibility for his crimes, Becton rejected a plea agreement and was convicted at trial.  So, for that reason alone, his

situation is different.  Also, the Court must consider Becton's conduct in prison, including his "ten disciplinary infractions."  Gov't Opp'n at 24, ECF No. 604.

Becton also tries to rebut the Government's earlier claims that he has had disciplinary issues in prison:  "The District Court was misled into believing that Becton was involved in smuggling drugs in and out of federal prison" and "that Becton had committed an assault with a hazardous tool."  MFR at 13.  But he offers no evidence to counter the Government's claims, which are supported by Becton's criminal and disciplinary records.  Becton also highlights that he has been classified as "Medium Risk Recidivism Level."  Suppl. Addendum at 5.  But that cuts against him, not in his favor.

Becton alludes generally to an "evol[ution]" of "police tactics" which, he argues, would now make him "able to provide a myriad of evidence" to prove his innocence.  MCR2 at 13.  But he offers no more detail in support.  Besides, a change in investigatory procedures would not affect the Court's § 3553(a) analysis.

Finally, Becton cites the fact that he would be supervised for ten years upon release, requests forgiveness, and explains that his "drug dealing lifestyle" was prompted by his parents' crack addiction.  MCR2 at 14–15, 17.  And he explains that he has completed many classes and programs and that he mentors first-time offenders in a class that he created.  *Id.* at 15–16.  Plus, he highlights his desire to mentor young people and give back to his community.  *Id.* at 17.  And he notes that his sentence has been more onerous than expected due to COVID.  *See, e.g.*, MFR at 15–16; MCR2 at 13.

The Court commends Becton's desire to contribute to his community and acknowledges that COVID created difficult living conditions for everyone, but especially prison inmates.  And it credits Becton's argument that his limited involvement in prison rehab programs was driven by

his ineligibility.  MFR at 11.  But none of these points erases Becton's ten disciplinary infractions while in prison.  MCR Denial at 7.  Nor do they outweigh Becton's "violent and disturbing history of crime," "the seriousness of [his] offense . . . and his demonstrated unwillingness to follow the law or prison rules."  *Id.* at 6, 8.  These considerations still counsel against his early release.

Becton's original offense was serious, and his disciplinary infractions suggest he may reoffend. 18 U.S.C. § 3553(a)(2)(A)–(C).  So the balance of the § 3553(a) factors strongly favor denying Becton's early release.[5]

### V.

After considering all Becton's arguments in his Motion for Reconsideration, Supplemental Addendum, and second Motion for Compassionate Release, it is

**ORDERED** that Defendant's [616] Motion for Reconsideration and [617] Motion for Compassionate Release are DENIED.

**SO ORDERED.**

Dated: January 30, 2023                                      TREVOR N. McFADDEN, U.S.D.J.

---

[5] Becton also asks the Court to hold a sentencing hearing or for leave to file a sentencing memorandum.  MCR2 at 14.  But because he is not entitled to compassionate release nor a second motion under § 404 of the First Step Act, the Court denies both requests.